IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

GEORGE ANGEL HARRIS,                    *
                                        *
        Plaintiff,                      *
                                        *
        v.                              *        CV 120-147
                                        *
INVESTIGATOR JON HIXON and              *
INVESTIGATOR JOSEPH BULTMAN,            *
                                        *
        Defendants.                     *

---

**O R D E R**

---

Presently pending before the Court is Defendant Bultman's
motion to exclude the opinion testimony of Timothy Williams, Jr.
(Doc. 21), Defendant Bultman's motion for summary judgment (Doc.
17), and Defendant Hixon's motion for summary judgment (Doc. 22).
For the reasons that follow, Defendant Bultman's motion to exclude
is **GRANTED**, Defendant Bultman's motion for summary judgment is
**GRANTED**, and Defendant Hixon's motion for summary judgment is
**GRANTED**.

## I. BACKGROUND

On January 9, 2019, an unknown suspect broke into Jacob
Newman's vehicle at Evans Fitness Express in Evans, Georgia and
stole various items, including a debit card. (Doc. 19, at 1; Doc.

22-1, at 1.)   The events took place in Columbia County, Georgia, so the case was assigned to Columbia County Sheriff's Office Investigator Joseph T. Bultman.   (Doc. 19, at 2.; Doc. 22-1, at 1.)   Defendant Bultman took several steps in the course of his investigation, including speaking to the victim and contacting the victim's financial institution to obtain records of when and where the stolen debit card was used.   (Doc. 19, at 2.; Doc. 22-1, at 1-2.)   Defendant Bultman discovered the debit card had been used at two Circle K gas stations and two Redbox DVD kiosks and proceeded to visit these locations and review their security camera footage. (Doc. 19, at 2; Doc. 22-1, at 2.)   Defendant Bultman checked to see if there were security cameras at the fitness center to review the break-in but found none.   (Doc. 19, at 4; Doc. 22-1, at 2.)

Upon review of the security footage, Defendant Bultman did not see a suspect at the gas pumps; however, the footage at the Redbox locations showed whom he believed to be a light-skinned male with dreadlocks using the card at the same times indicated on the victim's bank records.   (Doc. 19, at 2; Doc. 22-1, at 2.) Based on two previous encounters, Defendant Bultman identified the suspect as Plaintiff.   (Doc. 19, at 3; Doc. 22-1, at 2.)

In 2015, Defendant Bultman had arrested Plaintiff at a McDonald's restaurant for obstructing a law enforcement officer during a fight.   (Doc. 19, at 2.)   Then, sometime between 2015 and 2019, Defendant Bultman responded to a domestic dispute between

Plaintiff and his girlfriend. (Id. at 3.) During these two previous encounters, Defendant Bultman spent an hour or an hour and a half with Plaintiff. (Id.) After reviewing the Redbox security footage, Defendant Bultman proceeded to review mugshots of Plaintiff from previous bookings as well as a Facebook photograph to compare them with the Redbox suspect. (Id.) Defendant Bultman believed Plaintiff to be the suspect and attempted to locate him by visiting his last known address but was not successful. (Doc. 22-1, at 3.)

The crimes involving the use of the debit card took place in Richmond County, so Defendant Bultman contacted the Richmond County Sheriff's Office and met with Richmond County Investigator Hixon. (Doc. 19, at 4.) Defendant Bultman provided him with the evidence from his investigation thus far and informed Defendant Hixon he had previous interactions with Plaintiff and was confident he was the suspect in the Redbox videos. (Id.; Doc. 22-1, at 3.) The Parties agree Defendant Bultman's investigation and presentation of evidence to Defendant Hixon were within the scope of his discretionary authority. (Doc. 19, at 4-5; Doc. 39, at 3.)

After reviewing the evidence, Defendant Hixon conferred with his supervisors, prepared arrest warrant applications, and obtained warrants for the arrest of Plaintiff from Judicial Officer Courtney McCord. (Doc. 19, at 4-5.) On April 8, 2019, Plaintiff was a passenger in an automobile involved in an accident in

Richmond County.   (Id.)   The officer that responded checked the IDs of those involved, ran a criminal history check, and found two outstanding warrants on Plaintiff.   (Id.)   Plaintiff was arrested and taken to the Richmond County Jail but bonded out within a few hours.   (Id.)

The Richmond County District Attorney brought an Accusation against Plaintiff for two counts of financial transaction card fraud that was later dismissed.   (Id. at 5-6.)   Plaintiff then filed the present suit on October 9, 2020 and filed an Amended Complaint on November 11, 2020.   (Doc. 22-1, at 4.)   Plaintiff brings five claims: (1) Fourth Amendment claim against Defendant Bultman; (2) Fourth Amendment claim against Defendant Hixon; (3) Georgia Constitutional claim for unreasonable seizure against both Defendants; (4) Georgia false arrest claim against both Defendants; and (5) Georgia malicious prosecution claim against both Defendants.   (Doc. 5, at 6-12.)


## II. MOTION TO EXCLUDE

First, Defendant Bultman moves to exclude the opinion testimony of Mr. Williams under Federal Rules of Evidence 403 and 702 and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). (Doc. 21, at 1.)   Plaintiff argues Mr. Williams' opinions are based on his experience, knowledge, and sound methodology and admissible under the Federal Rules of Evidence.   (Doc. 34.)

4

## A. **Daubert** Standard

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

"As the Supreme Court recognized in Daubert . . . , Rule 702 plainly contemplates that the district court will serve as a gatekeeper to the admission of [expert] testimony." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999) (citing Daubert, 509 U.S. at 592 n.10).

The Eleventh Circuit requires district courts engage in a three-part inquiry to determine the admissibility of expert testimony under Rule 702. Quiet Tech., 326 F.3d at 1340. Specifically, the court must consider whether:

5

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. at 1340-41 (citations omitted).

First, an expert may be qualified to testify due to his knowledge, skill, experience, training, or education. Trilink Saw Chain, LLC v. Blount, Inc., 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008) (citation omitted). "A witness's qualifications must correspond to the subject matter of his proffered testimony." Anderson v. Columbia Cnty., No. CV 112-031, 2014 WL 8103792, at *7 (S.D. Ga. Mar. 31, 2014) (citing Jones v. Lincoln Elec. Co., 188 F.3d 709, 723 (7th Cir. 1999)). However, an expert's training need not be narrowly tailored to match the exact point of dispute. McDowell v. Brown, 392 F.3d 1283, 1297 (11th Cir. 2004).

Second, the testifying expert's opinions must be reliable. In Daubert, the Supreme Court directed district courts faced with the proffer of expert testimony to conduct a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 592-93. There are typically four factors courts should consider; however, experience-based experts need not satisfy the

factors set forth in Daubert. See United States v. Valdes, 681 F. App'x 874, 881 (11th Cir. 2017) (affirming admission of testimony from expert identifying firearms based upon years of experience working with firearms). Nevertheless, "[t]he inquiry is no less exacting where the expert 'witness is relying solely on experience' rather than scientific methodology." Summit at Paces, LLC v. RBC Bank, No. 1:09-cv-03504, 2012 WL 13076793, at *2 (N.D. Ga. May 22, 2012) (quoting FED. R. EVID. 702, advisory committee's notes to 2000 amendment)). Bearing in mind the diversity of expert testimony, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

Regardless of the specific factors considered, "[p]roposed testimony must be supported by appropriate validation – i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590. In most cases, "[t]he expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." FED. R. EVID. 702, advisory committee's notes to 2000 amendment. "Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough" to carry the proponent's burden. Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., 402 F.3d

1092, 1113 (11th Cir. 2005).   Relevant in this case, "if the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." United States v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2004) (citation omitted) (alterations in original).

Third, expert testimony must assist the trier of fact to decide a fact at issue – the Supreme Court describes this test as one of "fit."   Daubert, 509 U.S. at 591.   To satisfy this requirement, the testimony must concern matters beyond the understanding of the average lay person and logically advance a material aspect of the proponent's case.   Id.; Frazier, 387 F.3d at 1262.   Yet, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63 (citation omitted).   Using these standards, the Court will address Defendant Bultman's motion to exclude.

## B. Discussion

Mr. Williams' expert report includes the following findings:

- [T]here was no investigation conducted by Investigator Bultman to forensically connect Mr. Harris to the vehicle and the theft of the debit card;

- There was no investigation conducted by Investigator Hixon to establish the whereabouts of Mr. Harris during the theft of the debit card;

- Plaintiff was identified as the suspect . . . by a consensus of [the investigator's] colleagues absent any investigation to connect Plaintiff to the crime. This type of investigation is very problematic in that it brings up the critical issue of cross ethic identification. The consensus of this identification . . . [was] made by all White individuals in an identification of a Black suspect. This type of investigation falls below law enforcement standards and could lead to a wrongful conviction.

- Investigator Hixon had not taken any classes on photograph identification. . . . Without the requisite training, law enforcement personnel should not be assigned to an investigative assignment of any magnitude. . . . [Therefore], Investigator Hixon was not trained to be in the position he was then working and presently working.

- [T]here was no investigation to ascertain if the Plaintiff's hair matched the hair of the suspect. . . . [T]his portion of the investigation fell/falls below law enforcement investigative standards.

- Failure to contact and interview the Plaintiff in this matter, fell/falls below law enforcement investigative standards.

- The Affidavits for the February 20, 2019 warrants are not accurate. . . . Seasoned investigative personnel are trained that arrest warrant information must be accurate. . . . A thorough and concise investigation was not completed in this case and fell/falls below law enforcement investigative standards.

(Doc. 34-1, at 6-7.)   Defendant Bultman moves to exclude these

opinions for various reasons.   (See Doc. 21.)   First, he believes

the issue in this case is whether Investigator Bultman violated

Plaintiff's constitutional rights, not whether he met

investigative standards; yet, Mr. Williams' proposed testimony

does not offer to the jury any information counsel cannot present

through lay witnesses.   (Id. at 4.)   Further, his proposed testimony will likely confuse the jury and waste time because it is cumulative and not specific to the investigative procedures Defendant Bultman was to follow.  (Id. at 4-5.)   Second, even if Mr. Williams' testimony would be helpful to the trier of fact, it fails to meet the rest of the relevant Daubert analysis because he did not use reliable methods in reaching his conclusions, and himself admitted "[p]rocedures may differ from agency to agency." (Id. at 6-7.)   Defendant Bultman argues Mr. Williams "has failed to explain how his 'background, education, and experience' is a sufficient basis for his opinion and is reliably applied to the facts when he has never referenced, and cannot articulate, the actual procedures Investigator Bultman was required to follow." (Id. at 7.)   He is never able to ascertain what is required for an investigation to be considered "proper."   (Id. at 8.)   Finally, Defendant Bultman argues Mr. Williams' testimony will lead to confusion, will unfairly prejudice Defendant Bultman, and such prejudice outweighs any probative value his proposed testimony might give.  (Id. at 9-10.)

In response, Plaintiff argues Defendant Bultman does not cite a single case in which Mr. Williams' testimony has been excluded and there are numerous cases in which his testimony has not been challenged at all.   (Doc. 34, at 9-10.)   Further, Plaintiff believes Mr. Williams has a basis to conclude a proper

investigation was not done regardless of whatever local procedures were or were not followed.   (Id. at 12.)   Plaintiff also argues Mr. Williams' testimony is important for non-layperson issues such as cross-ethnic identification which is a "critical issue" and would be helpful for jurors to understand.   (Id. at 13-14.) Finally, Plaintiff argues Mr. Williams' testimony does not violate Rule 403, and if a Rule 403 issue were to arise, it is more properly suited for a motion in limine.   (Id. at 17-18.)

In support of his motion, Defendant Bultman again argues Mr. Williams' opinion "is founded solely on Williams' inarticulable and nonbinding definition of a proper investigation."   (Doc. 47, at 2.)   Further, he "did not review or rely on any specific local, national, or model guideline in forming his opinion."   (Id. at 3.) Defendant Bultman also argues that when a witness is relying solely or primarily on experience, he is required to explain why that experience is a sufficient basis for the opinion and how the experience is reliably applied to the case, and Mr. Williams did not do so here.   (Id.)   And finally, he again argues the testimony is misleading and not helpful to the jury.   (Id. at 5.)

There appears to be no dispute Mr. Williams is qualified to testify as an expert.   However, Defendant Bultman does challenge the reliability and effect of the testimony on the trier of fact.

1. Methodology

The court is given considerable discretion to determine reliability based on the facts of the case. Kumho Tire, 526 U.S. at 152. When the testimony is grounded on the expert's experience, the factors outlined in Daubert are typically inapplicable. Instead, the expert must explain how his experience leads to his conclusions, why that experience is a sufficient basis for his opinion, and how his experience is reliably applied to the facts. Frazier, 387 F.3d at 1261. Defendant Bultman argues Mr. Williams fails to do these things and the Court agrees.

The majority of Mr. Williams' opinions simply contain conclusory statements that the investigators' investigations were insufficient. Defendant Bultman argues the theme of his testimony is "ipse dixit on steroids." (Doc. 21, at 6.) The district court does not have to admit opinion evidence connected to data only by the expert's ipse dixit. McMillan v. Wal-Mart Stores, Inc., No. CV 212-022, 2013 WL 12182100, at *3 (S.D. Ga. Feb. 21, 2013) (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).

Mr. Williams fails to outline the basis of his opinions, as he does not explain what standards he relies upon when stating his findings. His conclusions continually state the "investigation falls below law enforcement standards" but fails to define that standard. (See Doc. 34-1, at 6-7.) Not once does he explain what a baseline standard would be; instead, he simply argues more should

have been done in investigating Plaintiff as the suspect. Mr. Williams references his "background, education, and experience" and provides his resume for validation, but he does not explain how he reaches his conclusions based on his experience and training. Overall, his testimony is lacking in that it does not answer the question of how his experience is reliably applied in this case beyond his own opinions.

### 2. Fit

Expert testimony must assist the trier of fact to decide a fact at issue. Daubert, 509 U.S. at 591. Defendant Bultman argues Mr. Williams' testimony will not do so and is very cumulative. (Doc. 21, at 4-5.) At issue is whether the investigators violated Plaintiff's constitutional rights and Plaintiff provides Mr. Williams' testimony to show everything the investigators did was, in his opinion, below investigative standards. (See Doc. 34, at 11-12.) Defendant Bultman argues Mr. Williams' opinions will mislead the jury because he will testify everything that was done falls below investigative standards simply because it varies from what he would have done. (Doc. 21, at 5.) Defendant Bultman believes Mr. Williams' "expert opinions" are nothing counsel and lay witnesses can present without an expert. (Id. at 6.)

The Court agrees with Defendant Bultman. The Eleventh Circuit has cautioned that expert opinions are not to be offered when they offer nothing more than what lawyers for the parties can argue in

closing arguments.  See Frazier, 387 F.3d at 1262-63.  In this instance, Mr. Williams testimony does exactly that.  He wants to opine on what steps the investigators should have taken; however, he cites no "go-by" standard for his thoughts.  If Mr. Williams could set forth a standard with steps that needed to be followed and show the investigators failed to follow those steps, that would be one thing, but Mr. Williams simply is giving the same arguments counsel can put forth: that additional investigative steps should have been taken.

The Court's main concern, which is raised by Defendant Bultman, is if this were to go to a jury, the jury would be misled by Mr. Williams' testimony and believe that just because additional steps were not taken, there was a constitutional violation.  That is not the proper legal standard, and the Fourth Amendment does not list out specific steps investigators must take in order to fulfill their investigative duty.  Additionally, Mr. Williams' opinions that the pictures do not look like Plaintiff are again unnecessary and not the type of information an expert is to provide to a jury.

Based on the foregoing, the Court finds Mr. Williams' expert opinions are not supported by appropriate validation and will not assist the trier of fact in determining whether a constitutional violation has occurred in this case.  Therefore, Defendant

Bultman's motion to exclude (Doc. 21.) is **GRANTED** and Mr. Williams' opinions shall be excluded.

### III. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, motions for summary judgment are granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'material' if . . . it might affect the outcome of the case . . . [and it] is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992)). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The Defendants here do not bear the burden of proof at trial, and therefore may "satisfy [their] initial burden on summary

judgment in either of two ways." McQueen v. Wells Fargo Home Mortg., 955 F. Supp. 2d 1256, 1262 (N.D. Ala. 2013) (citing Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993)). First, the Defendants "may simply show that there is an absence of evidence to support the [Plaintiff's] case on the particular issue at hand." Id. (citation omitted). If this occurs, Plaintiff "must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. (citation omitted). Or second, Defendants may "provide affirmative evidence demonstrating that the [Plaintiff] will be unable to prove its case at trial. Id. (citation omitted and alterations in original).

The Local Rules require the movants include a statement of undisputed material facts with their motions. See L.R. 56.1, SDGa. "Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins. Co., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007). Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). Accordingly,

the Court will only review the materials the Parties have specifically cited and legal arguments they have expressly advanced.  See id.

In this action, the Clerk of Court provided Plaintiff notice of the summary judgment motions, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 23, 24.)  For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.  Plaintiff responded to both motions for summary judgment (Doc. 38) and the Defendants replied (Docs. 44, 46).  The time for filing materials has expired, the issues have been thoroughly briefed, and the motions are now ripe for consideration.  In reaching its conclusions herein, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in the case.

## IV. DEFENDANT BULTMAN'S MOTION FOR SUMMARY JUDGMENT

Defendant Bultman moves for summary judgment, arguing he is entitled to qualified immunity with respect to Plaintiff's 42 U.S.C. § 1983 claim, and Plaintiff's state law claims should be dismissed as a matter of law.  (Doc. 17; Doc. 18, at 6-18.) Plaintiff opposes the motion, arguing the failure of both Defendants to investigate and articulate facts for the warrant violated the Fourth Amendment.  (Doc. 38, at 12-13.)  Further,

Plaintiff argues Defendant Bultman is not entitled to qualified immunity because he violated clearly established law. (Id. at 16-19.)  Additionally, Plaintiff argues the state law claims survive based on the same reasons and because malice can be inferred from the absence of probable cause.  (Id. at 21-23.)  The Court will address each of the claims in turn.

## A. Federal Claim

First, the Court will analyze Plaintiff's § 1983 claim and Defendant Bultman's argument for qualified immunity.

### 1. Malicious Prosecution Standard

Defendant Bultman argues he is entitled to qualified immunity with respect to Plaintiff's claim under the Fourth Amendment alleging he was "unreasonably arrested, detained, and prosecuted without probable cause."  (Doc. 18, at 5 (citing Doc. 5, at 6).)  Defendant Bultman classifies this claim as one of malicious prosecution based on the fact Plaintiff's claim goes towards the legal process, rather than the absence of such.  (Id. at 5-6.)

"Malicious prosecution claims brought pursuant to Section 1983 arise under the Fourth Amendment."  Taylor v. Villegas, No. 6:17-cv-135, 2019 WL 4741705, at *6 (S.D. Ga. Sept. 28, 2019) (citing Uboh v. Reno, 141 F.3d 1000, 1003-04 (11th Cir. 1998)).  To establish a claim, "Plaintiff must prove: (1) a violation of his Fourth Amendment right to be free from unreasonable seizures; and (2) the elements of the common law tort of malicious

prosecution." Id. (citing Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003)). "Said differently, a plaintiff must establish that he was maliciously prosecuted *and* that 'he was seized in relation to the prosecution, in violation of his constitutional rights.'" Id. (quoting Donley v. City of Morrow, 601 F. App'x 805, 813 (11th Cir. 2015) (per curiam)) (emphasis added).

First, to prove a § 1983 malicious-prosecution claim, under federal and Georgia law, Plaintiff must establish: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Blue v. Lopez, 901 F.3d 1352, 1357 (11th Cir. 2018) (citation omitted). As to the second prong, it is well established an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment. Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010). "Thus, the absence of probable cause is a necessary element for both prongs of a malicious prosecution claim." Jaudon v. Sasser for Est. of Sasser, No. 2:17-cv-118, 2020 WL 261226, at *8 (S.D. Ga. Jan. 16, 2020) (internal quotations and citations omitted). In other words, "the existence of probable cause for an arrest or arrest warrant defeats a § 1983 malicious prosecution claim." Id. (quoting Grider v. City of Auburn, 618 F.3d 1240, 1256 (11th Cir. 2010)); see also Black v. Wigington, 811 F.3d 1259, 1267 (11th Cir. 2016) ("[A] police

officer cannot be liable for malicious prosecution if the arrest

warrant was supported by probable cause.").

> Plaintiff "can prove that his arrest warrant was
> constitutionally infirm if he establishes either that
> the officer who applied for the warrant should have known
> that his application failed to establish probable cause,
> or that an official, *including an individual who did not
> apply for the warrant*, intentionally or recklessly made
> misstatements or omissions necessary to support the
> warrant."

Palmer v. Robbins, No. 4:19-cv-167, 2021 WL 4487604, at *5 (S.D.

Ga. Sept. 30, 2021) (quoting Williams v. Aguirre, 965 F.3d 1147,

1165 (11th Cir. 2020)).

### 2. Qualified Immunity Standard

"Qualified immunity offers complete protection for government

officials sued in their individual capacities if their conduct

does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known."   Grider,

618 F.3d at 1254 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818

(1982); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002))

(alterations and internal quotation marks omitted).   "Qualified

immunity from suit is intended to allow government officials to

carry out their discretionary duties without the fear of personal

liability or harassing litigation, protecting from suit all but

the plainly incompetent or one who is knowingly violating the

federal law."   Id.   (citation and internal quotation marks

omitted).   In other words, "[o]fficials are not liable for bad

guesses in gray areas; they are liable for transgressing bright lines." Robinson v. Payton, 791 F.3d 824, 829 (8th Cir. 2015) (quoting Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004)).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing Vinyard, 311 F.3d at 1346). To determine whether a government official was acting within the scope of his discretionary authority, courts consider whether the official "(a) perform[ed] a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004) (citation omitted). It is undisputed that Defendant Bultman was acting within his discretionary authority in this case. (See Doc. 19, at 4-5; Doc. 39, at 3.)

"Once the defendants establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003)). Accordingly, the Court must turn to the evidence to determine whether Plaintiff can demonstrate Defendant Bultman is not entitled to qualified immunity. Bowen v. Warden Baldwin State Prison, 826 F.3d 1312, 1319 (11th Cir. 2016). Plaintiff must

allege facts to prove Defendant's conduct violated a constitutional right. See Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). "If a constitutional right would have been violated under the *plaintiff's* version of the facts, the court must then determine 'whether the right was clearly established.'" Id. (quoting Saucier v. Katz, 533 U.S. 194 (2001)).

"To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause. Grider, 618 F.3d at 1257 (citations omitted). Therefore, "qualified immunity is not lost when all the evidence available to the officer establishes at least arguable probable cause, even if this evidence is not listed in an affidavit." Carter v. Gore, 557 F. App'x 904, 909 (11th Cir. 2014) (citation omitted). "Because § 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation, each defendant is entitled to an independent qualified-immunity analysis," which considers "only the actions and omissions in which that particular defendant engaged." Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018) (internal citations and quotations omitted).

3. Discussion

Plaintiff alleges Defendant Bultman violated his constitutional rights because he was arrested by a warrant not supported by probable cause. (Doc. 5, at 7.) Defendant Bultman

argues an array of things to support his summary judgment motion: (1) reasonable misidentifications are protected by qualified immunity and he reasonably believed Plaintiff resembled the Redbox suspect; (2) an arrest based on a reasonable mistake does not violate the Fourth Amendment; (3) Plaintiff cannot show Defendant Bultman instituted or continued the prosecution because he handed over the case to Richmond County and there were intervening acts of others that broke the chain of causation; (4) there is no evidence of malice or ill intent; and (5) Defendant Bultman had arguable probable cause to believe Plaintiff was the Redbox suspect and his identification, even if mistaken, "was such that reasonable officers in the same circumstances and possessing the same knowledge . . . could have believed that probable cause existed to arrest." (Doc. 18, at 8-14.)

Defendant Bultman relies on Rushing v. Parker, 599 F.3d 1263 (11th Cir. 2010) for his argument that reasonable misidentification is protected by qualified immunity. (Doc. 18, at 8.) In Rushing, the Eleventh Circuit found the officer had no doubts about the identity of the suspect when he completed the warrant affidavit; therefore, the arrest affidavit, although mistaken, was such that reasonable officers in the same circumstances with the same knowledge could have believed probable cause existed. 599 F.3d at 1267. This is the type of conduct qualified immunity is meant to protect: "a reasonable mistake in

the legitimate performance of an officer's duties." Id. (citation omitted). "The [reasonableness] standard is an objective one, and therefore does not include an inquiry in the officers' subjective intent or beliefs." Id. at 1266 (quoting Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990)).

The analysis in Rushing is applicable here - there is no evidence, and Plaintiff does not once suggest, Defendant Bultman had any hesitations Plaintiff was the Redbox suspect.  To the contrary, Defendant Bultman was very confident from the get-go the Redbox suspect was in fact Plaintiff and portrayed his beliefs to Defendant Hixon as well.  (See Doc. 19, at 3-4.)

Plaintiff relies on Cozzi v. City of Birmingham, 892 F.3d 1288 (11th Cir. 2018) to argue the Eleventh Circuit requires a duty to conduct a reasonable investigation under the Fourth Amendment.  (Doc. 38, at 13.)  First, the arrest in Cozzi was warrantless, already differentiating the case from this one.  892 F.3d at 1293.  Second, the totality of the circumstances showed the arresting officer received "verifiable[,] exculpatory information" before arresting the suspect that his single tattoo did not match the crime scene photograph of a man with numerous tattoos.  Id. at 1294.  Therefore, the court emphasized the requirement that officers look at the totality of the circumstances when establishing arguable probable cause, and when they had such exculpatory evidence, probable cause was not reasonable.  Id. at

1297.  <u>Cozzi</u> can also be differentiated because here, Plaintiff points to no exculpatory evidence known by Defendant Bultman at the time of his investigation.   Plaintiff simply theorizes Defendant Bultman "could have" obtained additional facts "by taking routine investigative steps such as interviewing Harris, determining his whereabouts at the time of the crime," and many other things.   (Doc. 38, at 13.)   While easy to theorize about things that could have been done in an investigation, this is not the same situation as <u>Cozzi</u> where the arresting officer was in fact aware of exculpatory information and ignored it.   Plaintiff does not once argue Defendant Bultman had hesitations Plaintiff was the Redbox suspect; instead, he simply argues Defendant Bultman should have done more of an investigation.   (Doc. 38, at 3, 11.)

Defendant Bultman was not required to take "every conceivable step" in his investigation "to eliminate the possibility of [detaining] an innocent person," but he could not ignore information directly provided to him or choose not to obtain easily discoverable facts.  See <u>Rankin v. Evans</u>, 133 F.3d 1425, 1436 (11th Cir. 1998) (citations omitted); <u>see also</u> <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1228-32 (11th Cir. 2004) (officers are not "permitted to turn a blind eye to exculpatory information that is available to them").  However, Defendant Bultman took the facts he had, and his experience in dealing with Plaintiff, and made an informed inference that Plaintiff was the Redbox suspect.  "Drawing

a logical inference from facts you possess constitutes at least *some* examination of the evidence at hand." Washington v. Rivera, 939 F.3d 1239, 1247 (11th Cir. 2019).   He "did not deliberately ignore proferred evidence of innocence" and "did not have any information that would give rise to serious doubts" about Plaintiff's guilt; therefore, "[his] failure - if [he] did in fact commit a constitutional violation - was not that [he] ignored relevant evidence and conducted [his] investigation in a biased manner."  Id. at 1248.

The Court finds Defendant Bultman's actions were "a reasonable mistake in the legitimate performance of [his] duties;" therefore, Defendant Bultman did not violate clearly established Fourth Amendment law and is entitled to qualified immunity as to Plaintiff's § 1983 claim.  See id. at 1249 ("[A] reasonable mistake in the legitimate performance of the officer's duties ought to be protected by qualified immunity."   (citation and quotations omitted)).

Additionally, the Court finds Defendant Bultman had arguable probable cause in identifying Plaintiff and sharing his conclusions with Defendant Hixon.  The Court believes reasonable officers in the same circumstances with the same knowledge could have believed probable cause existed, and such is evidenced by the fact Defendant Bultman shared his conclusions with Defendant Hixon and others at the Richmond County Sheriff's Office and none of

them objected. (Doc. 19, at 4.) Therefore, not only was Defendant Bultman justified in his misidentification, he also had arguable probable cause. Based on this, Defendant Bultman is entitled to qualified immunity and summary judgment on Plaintiff's § 1983 claim.

## B. State Law Claims

Plaintiff also brings state law claims under the Georgia Constitution, O.C.G.A. § 51-7-1 for false arrest, and O.C.G.A. § 51-7-40 for malicious prosecution. (Doc. 5, at 10-12.) Defendant Bultman argues these claims fail as a matter of law. (Doc. 18, at 15.) Plaintiff believes the state law claims should survive for the same reasons as his federal claim. (Doc. 38, at 19.)

### 1. Georgia Constitutional Claim

"Georgia has 'no equivalent to 42 U.S.C. § 1983, which gives a claim against a state officer individually for certain unconstitutional acts.'" Dixon v. Ga. Dep't of Pub. Safety, 135 F. Supp. 3d 1362, 1372 (S.D. Ga. 2015) (quoting Howard v. Miller, 476 S.E.2d 636, 639 (Ga. Ct. App. 1996)); see also Draper v. Reynolds, 629 S.E.2d 476, 478 n.2 (Ga. Ct. App. 2006) ("Georgia does not have an equivalent to 42 U.S.C. § 1983 . . . .").

Based on this, Plaintiff has no basis upon which to bring a Georgia Constitutional claim against Defendant Bultman, and Defendant Bultman is entitled to summary judgment on this claim.

2. <u>False Arrest - O.C.G.A. § 51-7-1 and Malicious Prosecution - O.C.G.A. § 51-7-40</u>

The causes of action for false arrest and malicious prosecution are mutually exclusive; "if one right of action exists, the other does not." <u>Stephens v. Zimmerman</u>, 774 S.E.2d 811, 815 (Ga. Ct. App. 2015) (quoting <u>Perry v. Brooks</u>, 332 S.E.2d 375 (Ga. Ct. App. 1985)).

> Where, as here, there has been an arrest pursuant to a warrant, the remedy depends on whether the accused was prosecuted.  "If after the arrest, the warrant is dismissed or not followed up, the remedy is for [false] arrest.  But if the action is carried on to a prosecution, an action for malicious prosecution is the *exclusive remedy*, and an action for [false] arrest will not lie."

<u>Id.</u> (citations omitted and alterations adopted).  In this case, Plaintiff was prosecuted, although it was ultimately dismissed, so the only claim he can bring is for malicious prosecution.

To succeed on a claim for malicious prosecution in Georgia, Plaintiff must prove: "(1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff." <u>Barnette v. Coastal Hematology & Oncology, P.C.</u>, 670 S.E.2d 217, 220 (Ga. Ct. App. 2008).  Plaintiff argues a jury could find he was maliciously prosecuted because there was no probable cause and malice can be inferred from the absence of such.  (Doc. 38, at 22.)  Defendant Bultman argues there is no evidence of

actual malice on his part, and he is protected by official immunity. (Doc. 18, at 18.) The Court agrees with Defendant Bultman.

"In the context of official immunity, actual malice requires a deliberate intention to do wrong. . . . Ill will alone is insufficient to establish actual malice[.]" Stephens, 774 S.E.2d at 816 (alterations adopted and citations omitted). In other words, Plaintiff must show Defendant Bultman "acted with the deliberate intent to commit a wrongful act or with the deliberate intent to harm him." Id. (citation omitted). "Actual malice does not include implied malice or the reckless disregard for the rights and safety of others." Id. (citation omitted). Plaintiff, like the Plaintiff in Stephens, argues Defendant Bultman "should have investigated further before arresting him, and should have questioned witnesses and suspects." See id. However, as the Georgia Court of Appeals found, "without more, such actions do not show a deliberate intent to commit a wrongful act or to harm [Plaintiff]." Id. (citation omitted).

The Court finds Plaintiff has put forth no evidence to show Defendant Bultman acted with the deliberate intent to harm him. Additionally, as outlined above, Defendant Bultman had arguable probable cause with regards to his portion of the investigation. Based on the foregoing, Defendant Bultman is entitled to official immunity and judgment in his favor on Plaintiff's state law claims.

## V. DEFENDANT HIXON'S MOTION FOR SUMMARY JUDGMENT

Similar to Defendant Bultman, Defendant Hixon moves for summary judgment on all claims against him. (Doc. 22.) As explained above, each Defendant is entitled to an independent qualified immunity analysis, so the Court will utilize the standards previously set forth to determine Defendant Hixon's participation in the claims.

### A. Federal Claim of Malicious Prosecution

Defendant Hixon argues he is entitled to qualified immunity because he acted within his discretionary authority, had arguable probable cause to obtain arrest warrants for Plaintiff, and did not act with malice. (Doc. 22-2, at 2-11.) Plaintiff argues the warrant affidavit did not have sufficient support and Defendant Hixon failed to conduct a proper investigation. (Doc. 38, at 10-16.)

It is undisputed Defendant Hixon was acting within his discretionary authority during the relevant events. (See Doc. 38, at 16-17.) Therefore, the Court must determine whether Plaintiff can demonstrate Defendant Hixon is not entitled to qualified immunity. See Bowen, 826 F.3d at 1319. Defendant Hixon argues he is entitled to qualified immunity because he had arguable probable cause for Plaintiff's arrest warrants. (Doc. 22-2, at 4-5.)

Defendant Hixon argues it was reasonable for him to rely on Defendant Bultman's investigation and believe Plaintiff was the

Redbox suspect.  (Id.)  He relies on <u>United States v. Ventresca</u>, 380 U.S. 102 (1965) in which the Supreme Court held "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." <u>Id.</u> at 111 (citations omitted).  He also cites <u>Tillman v. Coley</u>, 886 F.2d 317 (11th Cir. 1989), where the Eleventh Circuit denied qualified immunity because the officer ignored his own serious doubts regarding the suspect's identity. <u>Id.</u> at 321.  Defendant Hixon compares <u>Tillman</u> to his own situation to argue he is entitled to qualified immunity because he had no doubts or concerns - he believed Defendant Bultman and his supervisors were correct in identifying Plaintiff.  (Doc. 22-2, at 5-6.)

As the Court outlined above regarding <u>Cozzi</u>, the Eleventh Circuit takes issue with investigations and arguable probable cause when the officers or investigators had doubts, hesitations, or exculpatory evidence and ignored it.  <u>See</u> <u>Cozzi</u>, 892 F.3d at 1294.  However, that is not the case here because Defendant Hixon had no hesitations or reason to doubt Plaintiff's identity as the Redbox suspect.

Additionally, as explained above, "[a] reasonable mistake in the legitimate performance of the officer's duties ought to be protected by qualified immunity." <u>Washington</u>, 939 F.3d at 1249 (citations omitted).  Plaintiff attempts to argue Defendant Hixon

only relied on information from Defendant Bultman; however, Defendant Hixon and four other officers, including his supervisor, viewed the videos and photographs and agreed Plaintiff was the suspect. (Doc. 38, at 15; Doc. 22-2, at 6-7.) Based on the foregoing, the Court finds Defendant Hixon made a reasonable mistake and a reasonable officer in the same circumstances could have done the same thing. In fact, at least four other officers did. Additionally, Plaintiff has not shown any evidence of malice because Defendant Hixon had arguable probable cause to obtain the arrest warrants and did not violate Plaintiff's Fourth Amendment rights. Therefore, Defendant Hixon is entitled to qualified immunity and judgment on Plaintiff's Fourth Amendment claim.

## B. State Law Claims

Plaintiff brings the same state law claims against Defendant Hixon that he did against Defendant Bultman.

### 1. Georgia Constitutional Claim

As explained above, Georgia has no equivalent to 42 U.S.C. § 1983, so Plaintiff cannot bring a private action under the Georgia Constitution. See Dixon 135 F. Supp. 3d at 1372. Therefore, Defendant Hixon is entitled to summary judgment on this claim.

2. <u>False Arrest - O.C.G.A. § 51-7-1 and Malicious Prosecution</u>
<u>- O.C.G.A. § 51-7-40</u>

Once again, Plaintiff cannot assert both of the enumerated claims because they are mutually exclusive.   See <u>Stephens</u>, 774 S.E.2d at 815.   The only proper claim is therefore malicious prosecution under O.C.G.A. § 51-7-40.   A malicious prosecution claim under Georgia law requires Plaintiff prove a lack of probable cause and malice, among other things.   See <u>Barnette</u>, 670 S.E.2d at 220.   Defendant Hixon argues he is entitled to official immunity because Plaintiff fails to show he acted without probable cause or with malice in obtaining the arrest warrants.   (Doc. 22-2, at 11-14.)

As explained under Plaintiff's federal claim against Defendant Hixon, based on the totality of the circumstances, Defendant Hixon had arguable probable cause and did not act with malice.   See <u>supra</u> Part V(A).   Despite Plaintiff's contentions that the investigation was improper, he has not put forth sufficient evidence for the Court to find Defendant Hixon acted with malice.   Actual malice requires a deliberate intention to do wrong, and Plaintiff offers nothing to suggest Defendant Hixon had that intention.   See <u>Stephens</u>, 774 S.E.2d at 816.   Based on this, Defendant Hixon is entitled to official immunity and judgment on Plaintiff's state law claims.

## VI. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant Bultman's motion to exclude (Doc. 21) is **GRANTED**, Defendant Bultman's motion for summary judgment (Doc. 17) is **GRANTED**, and Defendant Hixon's motion for summary judgment (Doc. 22) is **GRANTED**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendant Bultman and Defendant Hixon, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this *19th* day of July, 2022.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA